■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DEVONTAE McULLIN, Appellant. [59 NYS3d 329]—

Appeal from judgment, Supreme Court, New York County (Thomas Farber, J.), rendered January 22, 2013, convicting defendant, upon his plea of guilty, of burglary in the first degree (two counts) and attempted rape in the first degree, and sentencing him to concurrent terms of 13 years, unanimously held in abeyance, and the matter remitted for a *Mapp/Dunaway* hearing to determine whether defendant was arrested without probable cause and, if so, what evidence, if any, should be suppressed on the ground that it was obtained as the result of such unlawful arrest.

Defendant was indicted on the charges to which he ultimately pleaded guilty based on an incident that occurred at approximately 11:30 a.m. on October 11, 2011, at an apartment in a building on West 130th Street in Manhattan. According to the felony complaint, which was signed by a police detective at about 3:50 p.m. on October 13, 2011, the victim told the police that she had been attacked by a knife-wielding "unknown male" she had discovered in her bedroom; the attacker had fled when another person tried to open the door to the room. While the victim herself apparently was unable to tie defendant to the crime, the complaint states that another informant told the police—at an unspecified time—that he or she had "observed the defendant (i) standing on the fire escape of the above-stated location [of the crime], (ii) remove a knife from his backpack and place said knife in his pants, and (iii) climb through a window of the above-stated apartment." According to the complaint, a knife was recovered from the crime scene.

The People's voluntary disclosure form (VDF) states that defendant was arrested at 11:22 a.m. on October 13, 2011, and that he was identified by an unnamed witness as a suspect through a lineup conducted at 11:25 a.m. on October 13, 2011 (i.e., three minutes after the arrest).[1] The VDF states that both the arrest and the identification took place at 221 East 123rd Street, which is the address of a police station, and identifies two items of physical evidence in the People's possession, a knife and "pants." The VDF also discloses that, before the stated time of the arrest (11:22 a.m. on October 13), defendant had made two statements to a police detective, both at the same police station, the first statement at 11:30 p.m. on October 12 (the night before the arrest) and the second at 7:15 a.m. on October 13 (slightly more than four hours before the arrest). Accordingly, it appears from the VDF that defendant somehow arrived at the police station on the night of October 12, 2011, was questioned, presumably spent the night at the station, was questioned again early the next morning, and was formally placed under arrest around midday. The VDF provides no information about the manner in which defendant came to be present at the police station on the night of October 12, 2011, or the basis on which he came to the attention of the police on that day.[2]

In his omnibus motion seeking various forms of relief, defendant sought to suppress certain of the evidence against him—physical evidence described as "various clothing items recovered from the defendant," his statements to the police on October 12 and 13, and the lineup identification that had been obtained on October 13—on various grounds, including, as relevant to this appeal, the claim that this evidence was obtained as the result of the police having unlawfully seized defendant's person at his home, without probable cause, on October 12, 2011, which seizure allegedly violated his constitutional rights (US Const 4th, 14th Amends; NY Const, art I, § 12). In the alternative to an order suppressing all "tangible or testimonial fruits of his seizure and search by the police," defendant sought hearings on the issues raised, including a *Huntley* hearing on the voluntariness of his statements to the police and a *Wade* hearing on the propriety of the lineup identification.

In support of his contention that he had been unlawfully

---

1. The VDF also discloses that a second witness, also unnamed, failed to identify defendant from a lineup on October 13.

2. Again, the complaint, which was signed on the afternoon of October 13, after defendant had been placed under arrest, does not state when the informant who allegedly observed defendant on the fire escape of the victim's apartment provided that information to the police.

seized at his home on October 12, 2011, without probable cause, defendant, through his counsel, averred: "Based on the limited information available to the defense, the defendant states that he was in his home on October 12, 2011. The police arrived at his home, and entered without his permission, or the permission of any member of the household. On information and belief, the police did not possess a search and/or arrest warrant. At the time that he was seized, searched and arrested by the police[,] he had not been engaging in any unlawful or suspicious conduct, and was not in possession of any contraband. He was not acting in an illegal or suspicious manner prior to being detained by police authorities. He was seized, searched and arrested by the police without a warrant or probable cause."

Defendant stated that it was difficult for him to meet his statutory obligation under CPL 710.60 (1) to provide sworn allegations of fact controverting the People's facts, because the People had not disclosed how he had been identified as a suspect before he was arrested. In this regard, defendant, through his counsel, further averred, in pertinent part (citations and paragraph numbers omitted):

"The defendant is at a substantial informational disadvantage, in that he has not been informed by the prosecution as to the circumstances of his seizure by the police. The People have informed the defendant that he is accused of various crimes allegedly committed the day before [his alleged seizure], but have not informed the defendant which police officers seized the defendant . . . . The defendant challenges the reliability and basis of knowledge of any informant who may have transmitted any information to the police, on which the police officers may have relied in seizing, searching and arresting the defendant.

"Also, the prosecution has not informed the defendant whether the seizing officers had relied upon any information provided by civilian witnesses, or, if so, the identity, reliability or basis of knowledge of any such witnesses, or the content of any such information or description of the defendant. No witness information is included in the People's Voluntary Disclosure Form, which is to date the only source of information about the People's evidence that has been provided to the defense.

"In the absence of the foregoing information or any other information regarding the circumstances of the defendant's initial seizure by the police, requiring probable cause, the defendant is not in a position to controvert with greater specificity the basis for his seizure by the police."

In their opposition to the omnibus motion, the People did not specifically address defendant's claim that he had been arrested at his home on October 12. Rather, the People averred in conclusory fashion that "defendant was arrested lawfully," and "controvert[ed] all allegations to the contrary," without offering any factual detail. Although defendant's claims about his arrest are seemingly at odds with the VDF's statement that he was arrested at a police station at 11:22 a.m. on October 13, the People concluded that he was not entitled to a hearing on the suppression motion "because the defendant's motion does not establish a factual dispute requiring a hearing." To the extent defendant's motion sought additional factual discovery, the People took the position that the VDF had already "provide[d] all of the pretrial discovery to which the defendant is entitled."

By order entered on or about January 10, 2012, Supreme Court, as relevant to this appeal, granted defendant a *Wade* hearing (on the propriety of the procedure by which the identification evidence had been obtained) and a *Huntley* hearing (on the voluntariness of his statements) but denied him any relief based on the claim that the police had lacked probable cause to arrest him. With respect to the branch of the motion seeking to suppress physical evidence as the fruit of an allegedly unlawful arrest (*see Mapp v Ohio*, 367 US 643 [1961]), the court stated that "[d]efendant's factual allegation[s] are insufficient in light of the information contained on the felony [complaint] and in the VDF," but granted defendant "leave to renew upon appropriate papers within 14 days of the date of the date [sic] of this order or such further time as approved by the Court." With respect to the branch of the motion seeking to suppress defendant's statements as the fruit of an allegedly unlawful arrest (*see Dunaway v New York*, 442 US 200 [1979]), the court stated that "[d]efendant has failed to present factual allegations sufficient to support such relief," without granting leave to renew.

After the court rendered the foregoing decision, but before the *Huntley/Wade* hearing had been held, defendant pleaded guilty as indicated. He now appeals from the ensuing judgment of conviction, arguing principally that Supreme Court erred in summarily denying him a hearing on his motion to suppress evidence on the ground that it was obtained as the result of an arrest made without probable cause. For the reasons discussed below, we conclude that, given the limited information available to him, defendant made sufficient factual allegations to place at issue whether the People had probable cause to arrest

him, whenever the arrest occurred. Accordingly, we hold the appeal in abeyance pending a hearing to determine that issue and, if it is resolved in defendant's favor, the extent to which the People's evidence (including physical evidence, defendant's statements, and the lineup identification) should be suppressed as the fruit of an arrest made without probable cause.

Initially, we note that, to the extent defendant was otherwise entitled to a suppression hearing to determine whether he was arrested without probable cause, he did not forfeit that right by pleading guilty before a *Huntley/Wade* hearing was held or by failing to renew the *Mapp* branch of his motion. Under the circumstances of this case, neither the court's grant of a *Huntley/Wade* hearing nor its grant of leave to renew the *Mapp* motion negated the finality of the January 10, 2012, order, insofar as that order denied the branch of defendant's suppression motion based on the alleged illegality of his arrest (*see* CPL 710.70 [2] ["An order finally denying a motion to suppress evidence may be reviewed upon an appeal from an ensuing judgment of conviction notwithstanding the fact that such judgment is entered upon a plea of guilty"]). The legality of the arrest depends upon whether, at the time of the arrest, the police had probable cause to believe that defendant committed the crime, a matter that would not have been at issue—and that defendant therefore would not have been entitled to explore—in the *Huntley/Wade* hearing, dealing with the voluntariness of defendant's statements and the propriety of the lineup procedures used to identify him (*see People v Bryant*, 8 NY3d 530 [2007] [remitting the matter for a *Mapp/Dunaway* hearing, which had been erroneously summarily denied, although the defendant had pleaded guilty before availing himself of the *Huntley/Wade* hearing he had been granted]). As for the court's grant of leave to renew ("within 14 days") the branch of defendant's suppression motion seeking to suppress physical evidence based on the alleged illegality of the arrest (but not the branches of the motion seeking to suppress statements and identification on the same ground), defendant could not legitimately move for renewal without additional facts to plead (*see* CPL 710.40 [4]; CPLR 2221 [e]). Given that the People, in opposition, had taken the position that they had already provided defendant with all of the pretrial discovery to which he was entitled, and given further that the court's order did not direct the People to produce any additional information concerning the basis for the arrest, a renewal motion would have been futile, and defendant should not be penalized for not having made one. Accordingly, the January 10, 2012, order, insofar as it denied the branches of defendant's suppression

motion challenging the legality of his arrest, was final, and is subject to review upon defendant's appeal from the ensuing conviction upon his guilty plea.

Having established that defendant is entitled to appellate review of this issue, we find that his factual allegations suffice to entitle him to a hearing on whether his arrest was supported by probable cause, in view of the dispute concerning the time and place of his arrest (i.e., whether it occurred at his home on October 12 or at the police station on October 13) and the People's failure to disclose "the factual predicate for [defendant's] arrest" (*Bryant*, 8 NY3d at 534), whenever it occurred, or to explain how defendant "came to be at the station house [where the People claim he was arrested] in the first place" (*People v Jones*, 73 AD3d 662, 663 [1st Dept 2010]).[3] Given the limited information available to him, "defendant's allegation that the police lacked probable cause or reasonable suspicion to believe that he was involved in any criminal activity was sufficient to warrant a hearing" (*id.*).

"Hearings [on suppression motions] are not automatic or generally available for the asking by boilerplate allegations" (*People v Mendoza*, 82 NY2d 415, 422 [1993]; *see* CPL 710.60 [1] [suppression motion papers "must contain sworn allegations of fact . . . supporting (the) grounds" of the motion]). The sufficiency of a defendant's factual allegations "should be evaluated by (1) the face of the pleadings, (2) assessed in conjunction with the context of the motion, and (3) defendant's access to information" (*id.* at 426). "In determining the sufficiency of a defendant's factual allegations, a court must read defendant's suppression motion in the context of the case. Further, '[w]hether a defendant has raised factual issues requiring a hearing can only be determined with reference to the People's contentions' " (*Bryant*, 8 NY3d at 533, quoting *Mendoza*, 82 NY2d at 427). In this regard, "a court must consider 'the degree to which the pleadings may reasonably be expected to be precise in view of the information available to defendant' " (*Bryant*, 8 NY3d at 534, quoting *Mendoza*, 82 NY2d at 429).

Under the foregoing principles, the Court of Appeals held in *Bryant*—in a case presenting a fact pattern similar to that presented here—that the People cannot refuse to disclose the factual predicate for an arrest and, at the same time, oppose holding a suppression hearing on the ground that the defend-

---

**3.** According to the VDF, defendant's lineup identification did not occur until three minutes *after* his arrest on October 13. Thus, even if defendant was not arrested until October 13 at the police station, as the People claim, the People have not yet disclosed the factual predicate for the arrest.

ant has not alleged specific facts controverting the factual predicate for his arrest. The *Bryant* defendant claimed that he had been arrested at a particular time "in a building where he resides and away from where the crime took place," while the People claimed that the defendant had been arrested several hours later, at a police station, "after he had been identified by their witness and had made statements to the police" (8 NY3d at 533). The Court held that the defendant was entitled to a *Mapp/Dunaway* hearing, noting that, as in this case, the time of the arrest was in dispute, with no basis alleged for the arrest "if [as he claimed] defendant was arrested before his arrival at the police station" (*id.* at 533-534). In this regard, the Court observed that "defendant . . . lacked critical information only the People could provide—i.e., the factual predicate for his arrest. Because defendant lacked this information, he was not in a position to allege facts disputing the basis for his arrest" (*id.* at 534). The Court concluded: "[D]efendant's lack of access to information precluded more specific factual allegations and created factual disputes, the resolution of which required a hearing" (*id.*).

This Court followed *Bryant* in *People v Jones* (73 AD3d 662 [1st Dept 2010], *supra*), in which we held that the summary denial of a suppression motion had been erroneous because "[d]efendant clearly raised a factual issue as to when and where he was arrested, or otherwise taken into custody, so as to raise a Fourth Amendment issue (*see People v Mendoza*, 82 NY2d 415, 426 [1993]). Although the voluntary disclosure form could be interpreted as stating that defendant was arrested at a police station, immediately after being identified in a lineup, defendant's motion averred that he was arrested on the street approximately eight hours before the lineup took place and that, at the time of his arrest, he was not engaging in any behavior suggestive of illegal activity. Even if defendant was not formally arrested for the crimes of which he was convicted until after the lineup, this did not explain how he came to be at the station house in the first place. The People did not disclose whether defendant was placed in a lineup based on information linking him to the robbery (and what that information was), or whether he was in custody for some other reason (*see People v Bryant*, 8 NY3d 530, 533-534 [2007]). Under these circumstances, defendant's allegation that the police lacked probable cause or reasonable suspicion to believe that he was involved in any criminal activity was sufficient to warrant a hearing" (73 AD3d at 663).

Similarly, in *People v Wynn* (117 AD3d 487 [1st Dept 2014]),

we held that the court had erred in denying the defendant a hearing on her motion "to suppress statements and physical evidence as fruits of an allegedly unlawful arrest" where, "[a]lthough the People provided defendant with extensive information about the facts of the crime and the proof to be offered at trial, they provided no information whatsoever . . . about how defendant came to be a suspect, and the basis for her arrest, made hours after the crime at a different location" (*id.* at 487-488). Given the *Wynn* defendant's "complete lack of relevant information," we held that her "conclusory" denial of probable cause for her arrest "was sufficient to state a basis for suppression and raise a factual issue requiring a hearing" (*id.* at 488; *accord People v Terry*, 144 AD3d 531 [1st Dept 2016]; *People v Vasquez*, 200 AD2d 344, 347-349 [1st Dept 1994] [where the defendant had been "arrested at a time and place remote from the murder for which he was charged," and, at the time of his suppression motion, "had utterly no notion as to what the arresting officers knew which would have furnished a predicate for their seizure of him," the defendant's "allegations . . . that he had been doing nothing wrong at the time of the arrest and that he did not believe the arrest to have been supported by probable cause were adequate to sustain the motion at least to the extent of a hearing"], *lv denied* 84 NY2d 873 [1994]).

Here, under the foregoing case law, defendant's claim that he was arrested without probable cause at his home on October 12, 2012, at which time "[h]e was not acting in an illegal or suspicious manner," although conclusory, was sufficient to entitle him to a hearing on the legality of his arrest and the admissibility of any evidence derived therefrom. It is undisputed that the arrest, whether it occurred on October 12 or (as the People claim) on October 13, took place "at a time and place remote from the [crime] for which [defendant] was charged" (*Vasquez*, 200 AD2d at 347). The People, through the VDF, asserted that defendant was arrested around midday on October 13, at a police station, after giving statements at the same police station that morning and the previous night. Thus, at a minimum, defendant has raised a factual dispute concerning the time of his arrest. Further, the People provided defendant with no information at all as to how, by their account, he came to be at the police station in the first place, nor did they disclose the basis on which he first came to the attention of law enforcement in this investigation.[4] Indeed, the People have not even set forth the basis for defendant's arrest on October 13,

---

4. Defendant, of course, takes the position that he came to be at the police station because the police had unlawfully seized him on October 12.

since, according to the VDF, the lineup identification occurred after he was arrested. Assuming in the People's favor that the times of the arrest and the lineup identification were inadvertently transposed in the VDF, we still do not know what information and events led to defendant's presence at the police station.[5] While the complaint states that a witness told the police that he or she had observed defendant handling a knife on the fire escape outside the crime scene, the People did not disclose when the witness gave this information to the police.[6] In sum, in this case, as in *Bryant*, because "defendant lacked . . . information [about the grounds for his arrest], he was not in a position to allege facts disputing the basis for his arrest" (8 NY3d at 534). Accordingly, his denial of probable cause for his arrest suffices to require a hearing.[7]

Because the issue raised by defendant's suppression motion was whether the police had probable cause to arrest him at the time the arrest was made, based on the information then in their possession—a question distinct and separate from the question of defendant's guilt or innocence—defendant had no obligation to include in his motion papers a denial of the charges against him. A defendant moving to suppress evidence

---

5. Needless to say, a lineup identification that occurred on October 13 could not explain how the police came to be interested in talking to defendant on October 12, much less provide a factual predicate for an arrest on the latter date.

6. Obviously, if the witness first identified defendant at the lineup conducted at the police station on October 13, information from that witness, standing alone, could not explain defendant's presence at the police station in connection with the investigation of this particular crime. Further, since the complaint does not set forth a description of defendant by this witness, defendant would not have been able to controvert the People's allegations by providing a description of his own appearance at the time of the crime, which the People argue should have been set forth in his motion papers. Even if the complaint had set forth a description of defendant by the witness, such a description would cast no light on the question of whether the witness provided such information to the police before or after defendant was arrested.

7. *People v France* (12 NY3d 790 [2009]) and *People v Bazemore* (40 AD3d 228 [1st Dept 2007], *lv denied* 9 NY3d 863 [2007]), on which the People rely, are inapposite, as in each of those cases the People disclosed the factual predicate relied upon to establish probable cause (*see France*, 12 NY3d at 791 ["Despite having sufficient information from the felony complaint and the voluntary disclosure form concerning the factual predicate for his arrest, defendant failed to dispute that the victim told the police that he had been robbed by defendant, that the victim identified him to the police and that defendant admitted possessing a pawnshop receipt for the stolen goods"]; *Bazemore*, 40 AD3d at 228 ["Defendant's general and conclusory allegations failed to address the highly specific factual information supplied by the People in the felony complaint and voluntary disclosure form concerning defendant's conduct"]).

"must either deny participating in the [alleged criminal] transaction *or suggest some other grounds for suppression*" (*People v Jones*, 95 NY2d 721, 726 [2001] [internal quotation marks omitted]). Indeed, the Court of Appeals noted in *Jones* that its earlier case law "explicitly recognized that, even with a concession of involvement in criminal activity on the motion, a defendant could still raise a sufficient factual basis to challenge the legality of an arrest to merit a hearing" (*id.*; *see also Mendoza*, 82 NY2d at 431 ["defendant's participation in the (criminal) sale—even if expressly admitted—would not foreclose all possible challenges to the subsequent search and arrest"]). As this Court has observed, "[W]hether or not the defendant knew he had done something illegal was not the relevant issue in determining whether there had been an unreasonable search and seizure; it was rather whether the *police* knew a sufficient amount about any transgressions by the defendant to render their intrusion upon him legal" (*Vasquez*, 200 AD2d at 348). Thus, it is of no moment that defendant, in moving to suppress the evidence obtained as a result of his allegedly unlawful arrest, did not deny committing the alleged crime.

Finally, we reject defendant's request that we order that the scope of the hearing that we are granting him extend beyond the questions of whether he was arrested without probable cause and, if so, what evidence should be suppressed as the fruit of such an unlawful arrest. Defendant has either forfeited or failed to preserve his suppression claims under all other theories. Concur—Friedman, J.P., Sweeny, Renwick, Manzanet-Daniels and Andrias, JJ.