People v Esperanza (2022 NY Slip Op 00383)





People v Esperanza


2022 NY Slip Op 00383


Decided on January 25, 2022


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 25, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Judith Gische
Anil C. Singh Manuel Mendez Martin Shulman Bahaati E. Pitt


Ind. No. 4124/17 Appeal No. 14959 Case No. 2019-2057 

[*1]The People of the State of New York, Respondent,
v
Maria Esperanza, Defendant-Appellant.



Defendant appeals from a judgment of the Supreme Court, New York County (Felicia A. Mennin, J. at motions; Arlene D. Goldberg, J. at nonjury trial and sentencing), rendered November 1, 2018, convicting defendant of criminal possession of a controlled substance in the third degree, and sentencing her to four years' probation.




Robert S. Dean, Center for Appellate Litigation, New York (Carola M. Beeney and David J. Klem of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (Diana Wang and Eleanor Ostrow of counsel), for respondent.



PITT, J. 


Defendant appeals from her judgment of conviction, arguing primarily that the Supreme Court erred in summarily denying her request for a Mapp/Dunaway hearing on her motion to suppress evidence. For the reasons that follow, we hold defendant's appeal in abeyance, and remit this matter for a Mapp/Dunaway hearing to determine whether defendant was arrested without probable cause, and if so, what evidence, if any, should be suppressed on the ground that it was obtained as a result of such unlawful arrest.
As indicated in the felony complaint, at approximately 4:30 p.m. on October 20, 2017, an undercover officer approached Martin Calderone, a codefendant, in the vicinity of 163rd Street and Riverside Drive, and asked where he could find heroin. The officer gave Calderone pre-recorded buy money and the two walked to a nearby apartment building. While the undercover officer waited down the hall, Calderone entered what later turned out to be defendant's apartment. Upon returning, Calderone handed the officer a small bag of heroin.
Later that evening, the undercover officer contacted Calderone to buy more heroin. Calderone returned in a car to the cross street by defendant's apartment. The undercover officer got in the back seat and handed Calderone pre-recorded buy money. The undercover officer then saw Calderone sniffing drugs in the front seat of the car, at which point the undercover officer texted his field team to move in and arrest Calderone.
The complaint then indicates that a warrant was issued, allowing officers to search defendant's apartment. Upon executing the search warrant, the complaint indicates that Detective Vazquez observed defendant in her apartment and both the heroin and pre-recorded buy money were recovered from her possession. Defendant was subsequently arrested.
Thereafter, on January 10, 2018, defendant filed an omnibus motion, seeking, among other things, to suppress the physical evidence seized from her person and the heroin that was found at her residence. The motion to suppress alleged: "[t]he defendant was not engaged in any conduct that could be considered criminal at the time of her arrest and did not provide law enforcement with permission and/or authority to enter and/or search [her] . . . residence." The motion adds that defendant was not present during the underlying drug transaction and, as relevant to this appeal, the claim that "defendant did not [*2]give verbal or written consent to law enforcement to enter and/or search her above-described residence." As such, defendant averred that the search and seizure were in violation of defendant's constitutional rights and the evidence obtained thereafter should be suppressed (United States v Crews, 445 US 463 [1980]; Dunaway v New York, 442 US 200 [1979]; Wong Sun v United States, 371 US 471 [1963]). In the alternative to an order suppressing all evidence found in her apartment and on her person, defendant sought a Mapp/Dunaway hearing to determine the legality of the search (see Mapp v Ohio, 367 US 643 [1961]; Dunaway, 442 US at 200). The omnibus motion also sought to controvert the search warrant on several grounds, including that the warrant contained perjury or a statement in reckless disregard for the truth. Notably, the motion concluded with a statement that defendant had "virtually no information available to her other than that contained in the complaint." The omnibus motion correspondingly included a broad demand to produce and demand for discovery.
In opposition to the omnibus motion, the People argued that defendant's request for a Mappi>/Dunaway hearing should be denied because defendant was searched, and the evidence seized, pursuant to the execution of a valid warrant. In this regard, the People averred that upon a search of the subject apartment, a drug detector dog was alerted inside the bathroom to a bag of heroin, which was wet and where water was observed on the floor. Thus, the People argued that the police had probable cause to arrest the defendant because she was the sole occupant of the apartment and was observed with wet hands. In further support of their claim that there was probable cause, the People noted the existence of the front door's peephole camera and a hidden compartment in one of the walls.
By order entered on or about February 27, 2018, Supreme Court, as relevant to this appeal, denied the motion to suppress the physical evidence on the ground that it was obtained upon execution of a valid search warrant that authorized a search of the target premises. The order also found that the search warrant was not defective and that defendant's claim that it was based on false testimony or perjury was conclusory and unsupported. The order did not explicitly address the denial of the request for a Mappi>/Dunaway hearing, but a review of the record shows that no hearing was held on this issue. After the court rendered the foregoing decision, a nonjury trial was held. Defendant was convicted of criminal possession of a controlled substance in the third degree in violation of Penal Law § 220.16 (1) and sentenced to a four-year term of probation.
Defendant now appeals from the ensuing judgment of conviction, arguing principally that the Supreme Court erred in summarily denying a Mappi>/Dunaway hearing on her motion to suppress evidence on the ground that the baggie of heroin was found during a pre-warrant police entry and search of [*3]her apartment. Defendant also argues that the conviction was against the weight of the evidence.
In opposition, the People first argue that defendant did not preserve her current claim that a Mapp/Dunaway hearing should have been granted to determine whether the pre-warrant police entry into her apartment constituted a search that tainted the post-warrant search. The People claim that, while defendant requested a Mapp/Dunaway hearing, she did not specifically contest the validity of the initial, warrantless search.
Initially, we note that defendant has preserved her claim for our review. As stated above, defendant's motion to suppress evidence states that she "did not give verbal or written consent to law enforcement to enter and/or search her . . . residence" and that the search and seizure in her apartment were in violation of her constitutional rights. The omnibus motion also separately contested the validity of the search warrant. These statements, although relatively bare, were sufficient to raise the issue of whether the police lawfully entered defendant's apartment, and thus whether there were any grounds to support suppression of evidence seized as fruit thereof.
Additionally, the validity of the search was preserved because the court below "'expressly decided' this question in response to a 'protest by a party'" (People v Edwards, 95 NY2d 486, 491 n 2 [2000], quoting CPL 470.05 [2]). Specifically, the court's written decision denied the hearing on the ground that there was probable cause to support a search warrant, and thus probable cause to enter defendant's apartment.
Nonetheless, even if we were to find that this claim was unpreserved, the unique circumstances of this case and the context of the motion certainly warrant relief in the interest of justice (see People v Mendoza, 82 NY2d 415, 426-428 [1993]; CPL 470.15 [3]). As will be discussed in greater detail below, given defendant's prior lack of access to material facts revealed at trial, she could do little else than make a boilerplate claim in support of suppressing evidence.
Pursuant to CPL 710.60, "suppression motions must be in writing, state the legal ground of the motion and 'contain sworn allegations of fact,' made by defendant or 'another person'" (Mendoza, 82 NY2d at 421, quoting CPL 710.60 [1]). If the papers submitted "raise a factual dispute on a material point which must be resolved before the court can decide the legal issue," a suppression hearing is required (People v Marquez, 246 AD2d 330, 331 [1st Dept 1998] [internal quotation marks omitted]). While "[h]earings are not automatic or generally available for the asking by boilerplate allegations," the pleadings must be considered "with reference to the face of the pleadings, the context of the motion and defendant's access to information" (Mendoza, 82 NY2d at 422). Thus, the court may only summarily deny the request for a hearing, outside of two exceptions not applicable here,[FN1] "if defendant does not allege [*4]a proper legal basis for suppression, or . . . if the 'sworn allegations of fact do not as a matter of law support the ground alleged' " (id. at 421, quoting CPL 710.60 [3] [b]).
In accordance with the principles set forth in Mendoza,this Court has previously held that "a court must consider the degree to which the pleadings may reasonably be expected to be precise in view of the information available to defendant" (People v McUllin, 152 AD3d 461, 466 [1st Dept 2017] [internal quotation marks omitted]). Along these lines, "[w]hether a defendant has raised factual issues requiring a hearing can only be determined with reference to the People's contentions" (Mendoza, 82 NY2d at 427). Indeed, "[i]t would be unreasonable to construe the CPL to require precise factual averments when, in parallel circumstances, defendant similarly does not have access to or awareness of the facts necessary to support suppression" (id. at 429). On the other hand, "[w]hen [a] defendant is able to specifically deny this information but fails to do so, it may be deemed a concession, which may render a hearing unnecessary" (id. at 428).
Here, it is necessary to consider the trial testimony when evaluating the context surrounding defendant's motion and her lack of information necessary to allege certain, pertinent facts. Notably, circumstances surrounding the drug sale and arrest of defendant were only expounded at trial and were not available to defendant at the time the motion to suppress was made.
Both Detective Vazquez and Detective Pichardo testified at trial that, after Calderone was arrested, the undercover officer knocked on defendant's door while the two detectives waited down the hall, though no one answered. Pichardo explained that, 10 or 15 minutes later, with the intent of "freezing" the apartment, he, Detective Vazquez, and uniformed officers went up to and knocked on defendant's door and stated that they were there responding to noise complaints. Pichardo also testified that, before defendant answered the door, he heard a toilet flush from inside the apartment. Both detectives were clear that several minutes after knocking, defendant opened the door and, without a search warrant, they walked into the apartment to freeze it. Detective Pichardo did not explicitly testify as to whether defendant consented to their entrance. When Detective Vazquez was asked if the officers had defendant's permission to enter her apartment, he responded that he did not know and that the uniformed officers who first entered would be the people to ask. The People did not present the uniformed officers as witnesses at trial. Finally, defendant explicitly testified that she did not give consent to the officers' entry.
Detective Pichardo also stated that, upon entering, he noticed that defendant's hands were wet. Detective Vazquez testified that he conducted a sweep of the apartment to ensure no other individuals were there, at which time he observed a small bag on the bathroom floor [*5]next to the toilet.
After conducting the sweep, Detective Vazquez then left the apartment and went to request a search warrant. The affidavit in support of the search warrant, however, did not mention that officers were already inside defendant's apartment or that heroin had been found. The search warrant was granted two hours later, and, as indicated in the complaint, the officers recovered the bag of heroin from the bathroom floor. Tests later confirmed that the bag contained heroin. The bag was not tested for DNA or fingerprints. Defendant was subsequently arrested. Finally, a search of defendant's person revealed the $40 pre-recorded buy money that the undercover officer had given Calderone earlier that day.
Although ultimately revealed at trial, the People, in the prosecution of this case, had a pattern of omitting these key pieces of information concerning the pre-warrant police entry into defendant's apartment. Namely, neither the application for a search warrant, the criminal complaint, nor the People's opposition to defendant's omnibus motion mentioned that the search warrant was requested only after officers had already been inside defendant's apartment and had conducted a protective sweep of the premises.
For example, the complaint states that Vazquez "obtained a search warrant . . . to search [defendant's apartment] . . . Upon execution of the search warrant on that same date, at approximately 20:30hrs, I observed [defendant] inside the apartment. A quantity of heroin . . . was recovered in [her] possession." Clearly, no pre-warrant entry or search can be deduced from these facts.
Similarly, the affidavit in support of the search warrant reads: "[a]lthough the location is currently frozen, one individual present inside the apartment when members of NYPD knocked on the door [sic]. Either she or another individual may attempt to destroy the property which is sought inside the target premises." Again, this statement suggests that the police are outside defendant's apartment. After all, it is unlawful for officers to enter a suspect's home, even to freeze it, absent exigent circumstances (see People v Lee, 83 AD2d 311, 314 [1st Dept 1981] [holding "the mere presence of narcotics, without more, is not such an exigent circumstance as would permit entry into private premises without a proper warrant"], affd 58 NY2d 771 [1982], cert denied 460 US 1044 [1983]). The affidavit does nothing to clarify the matter, as it does not indicate that exigent circumstances existed and does not definitively state that the officers had already entered defendant's apartment. Finally, the People's opposition to defendant's omnibus motion describes what transpired "[u]pon entry into the target location." Nowhere does the response mention a second entry. These papers are particularly deceptive considering they state that defendant "was observed by detectives with wet hands." However, as it was later revealed, defendant was first noticed to have wet hands upon [*6]the initial, warrantless entry into defendant's apartment, which occurred two hours prior.
The People's reliance on People v Lawson-Varsier (138 AD3d 486, 487 [1st Dept 2016] [holding that the lower court did not error in summarily denying the defendant's motion to suppress evidence where the "[d]efendant received detailed information about the sequence of events leading up to his arrest"]) is clearly misplaced. Given the misleading nature of the aforementioned documents, the People's response to defendant's omnibus motion added no further information revealing the factual predicate for defendant's arrest. Instead, "[b]y failing to set forth the facts leading to defendant's arrest," namely, the warrantless entry and that Detective Vazquez found heroin during the initial sweep of defendant's apartment, "the People failed to render defendant's flat denial insufficient" (People v Hightower, 85 NY2d 988, 990 [1995]). Although the Rosario materials, which contained memobook entries from Detective Vazquez and Detective Pichardo, as well as reports from the undercover officer, might have remedied any gap in knowledge defendant had regarding the first, pre-warrant entry by the officers, these materials were not disclosed until after the lower court ruled on the omnibus motion.
The People also contend that defendant should have known whether the police conducted an allegedly unlawful, pre-warrant search. The People specifically note that defendant was inside her apartment when the police entered and, accordingly, would have known whether the officers were conducting a search upon arrival, rather than waiting for a warrant.
To the contrary, due to her background and lack of familiarity with the criminal process, defendant was in a poor position to know what information was necessary to convey to her legal counsel in order to adequately plead a suppression motion under CPL 710.60. Defendant is 67 years old, nearly blind, does not speak English, and spent the first half of her life outside of the country. Furthermore, defendant has never been convicted of a crime. There is also nothing in the record to suggest that the warrant process was explained, in Spanish, to defendant. Additionally, as mentioned above, the People's papers offered little clarification on the timeline of events. Therefore, there is good reason why defendant should not be expected to have knowledge of the circumstances surrounding the initial warrantless entry and search of her apartment (but see People v Toxey, 220 AD2d 204, 205 [1st Dept 1995], lv denied 88 NY2d 855 [1996]).
Accordingly, defendant's allegations in her omnibus motion that she "did not give verbal or written consent to law enforcement to enter and/or search her . . . residence" and that "[s]uch a search and seizure as described above are in violation of the defendant's constitutional rights" were sufficient "when considered in the context of the case and in light of the minimal information available to the defendant [*7]at the time of the motion" (Hightower, 85 NY2d at 990). In fact, this is precisely the type of case contemplated in Mendoza where "seemingly barebones allegations may, in context, be sufficient to require a hearing" (82 NY2d at 427). Furthermore, given the fact that the motion to suppress contested the constitutionality of the search vis-À-vis the lack of defendant's consent, it cannot be said that defendant made "no claim that the initial search was improperly undertaken by the police" (People v Burr, 70 NY2d 354, 362-363 [1987], cert denied 485 US 989 [1988]).
The People also argue that that defendant's purportedly unpreserved claim does not warrant relief in the interest of justice given the allegedly lawful nature of the pre-warrant entry. In support of this contention, the People rely on People v Goris (159 AD3d 555 [1st Dept 2018]) for the proposition that the officers conducted a lawful "protective sweep" (as opposed to a search) (see Maryland v Buie, 494 US 325, 327, 336-337 [1990]; People v Lasso-Reina, 305 AD2d 121, 122 [1st Dept 2003], lv denied 100 NY2d 595 [2003]). The People also cite Burr (70 NY2d at 354) and urge that, even assuming the initial search was unlawful, evidence of the heroin would still be admissible under the independent source doctrine.
Far from bolstering the People's arguments, Goris and Burr demonstrate exactly why holding this case in abeyance and remanding it to the Supreme Court for a Mappi>/Dunaway hearing would be in the interest of justice even if we were to find defendant's claim unpreserved. Unlike the present case, in Burr, the Court of Appeals expressly noted that there was a suppression hearing and cited specific facts therein adduced [FN2] (Burr, 70 NY2d at 358-359). The underlying papers in Goris similarly show that a comprehensive hearing took place, which included testimony by three police officers and a private detective hired by the defendant in that case. With their extensive testimony, the suppression court was able to make a determination that the protective search was lawful, which this Court later affirmed (see Goris, 159 AD3d at 555).
Here, in contrast, no hearing was held. Furthermore, both defendant and the motion court were without knowledge of the fact that the police had entered defendant's apartment and found the baggie of heroin prior to obtaining and executing the search warrant. This was of course due to glaring omissions in the criminal complaint, affidavit in support of the search warrant, and the People's response to the omnibus motion. Thus, the People erroneously rely on Burr for the proposition that defendant's failure to specifically cite the warrantless entry and alleged unlawful search "not only deprived the People of any opportunity to rebut such a contention but also left an inconclusive record on the issue" (70 NY2d at 363). Had defendant failed at making this argument at a suppression hearing, as was the case in Burr, a denial of the motion to suppress would be proper and [*8]the People's argument might suffice (see id). However, it would be manifestly unfair and against the legislative intent of CPL article 710 to hold that defendant should have raised this issue at the motion stage, when it was the People's papers that obscured facts necessary for defendant to even be aware that such an argument should have been made (see Mendoza, 82 NY2d at 425, quoting People v Gruden, 42 NY2d 214, 217 [1977] [noting that CPL article 710 reflects competing policies between the legislative intent "that defendants should have fair pretrial procedures to address alleged constitutional violations" and the notion that "hearings are generally 'not available merely for the asking'"]).
In any event, the People's arguments pertaining to the potential legality of the warrantless search are unavailing as "the propriety of the denial of a suppression motion must be judged on the evidence before the suppression court and [ ] evidence subsequently admitted at the trial cannot be used to support the suppression court's denial" (People v Wilkins, 65 NY2d 172, 180 [1985]). Moreover, it has been previously held that the Appellate Division "may not make its own finding of an independent source based upon trial testimony" (People v James, 67 NY2d 662, 664 [1986]; see also People v Gonzalez, 55 NY2d 720, 721-722 [1981], cert denied 456 US 1010 [1982]). Thus, we cannot hold that the denial of the Mappi>/Dunaway hearing was proper, and the claim unpreserved, due to legal arguments pertaining to the lawfulness of the search and based on evidence adduced at trial, well after the lower court ruled on the motion to suppress.
In accordance with these principles, here, the trial testimony is being used solely to determine the context of defendant's motion, the extent of her lack of access to information (see Mendoza, 82 NY2d at 421-422), and the extent of information withheld from the motion court prior to making its decision to summarily deny defendant's motion. For the reasons stated above, we find that defendant's motion should not have been summarily denied pursuant to CPL 710.60, and a hearing should have been conducted to make the necessary findings of fact.
Accordingly, the appeal from the judgment of the Supreme Court, New York County (Felicia A. Mennin, J. at motions; Arlene D. Goldberg, J. at nonjury trial and sentencing), rendered November 1, 2018, convicting defendant of criminal possession of a controlled substance in the third degree, and sentencing her to four years' probation, should be held in abeyance, and the matter remitted for a Mapp/Dunaway hearing.
Judgment, Supreme Court, New York County (Felicia A. Mennin, J. at motions; Arlene D. Goldberg, J. at nonjury trial and sentencing), rendered November 1, 2018, held in abeyance, and the matter remitted for a Mapp/Dunaway hearing.
Opinion by Pitt, J. All concur.
Gische, J.P., Singh, Mendez, Shulman, Pitt, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION[*9], FIRST DEPARTMENT.
ENTERED: January 25, 2022



Footnotes

Footnote 1: The two exceptions to the court's authority to summarily deny suppression motions for lack of adequate factual allegations relate to motions to suppress statements as involuntarily made (Huntley motions) or an identification stemming from an improper procedure (Wade motions) (Mendoza, 82 NY2d at 421-422, citing CPL 710.60 [3] [b]).

Footnote 2: A more detailed description of the facts divulged at the suppression hearing can be found in the Appellate Division, Fourth Department order (People v Burr, 124 AD2d 5, 13 [4th Dept 1987]).